IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LEROY SHELLEY, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 20-28-RGA |
| | : |
| CAPTAIN RANDALL DOTSON, | : |
| | : |
| Defendant. | : |

Leroy Shelley, James T. Vaughn Correctional Center, Smyrna, Delaware.  Pro Se Plaintiff.

Andrew Robert Fletcher, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Defendant.

**MEMORANDUM OPINION**

September 21, 2023
Wilmington, Delaware

/s/ Richard G. Andrews
**ANDREWS, U.S. District Judge:**

Plaintiff Leroy Shelley, an inmate at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983.[1] (D.I. 3). He appears *pro se* and was granted leave to proceed *in forma pauperis.* (D.I. 5). The Second Amended Complaint is the operative pleading. (D.I. 22). Before the Court is Defendant's motion for summary judgment. (D.I. 31). Briefing is complete.[2]

**I.   BACKGROUND**

In his Second Amended Complaint, Plaintiff brings one claim against Defendant Captain Randall Dotson for violation of his First Amendment right to practice religion through the confiscation of Plaintiff's television while he was confined in the Security Housing Unit ("SHU"). (D.I. 22 at 1). Plaintiff is a Jehovah's Witness and asserts that because SHU inmates are unable to attend religious services, services are taped so SHU inmates can watch them on their televisions. The confiscation of his television resulted in his inability to watch services. Plaintiff alleges that the television was confiscated pursuant to a policy which was in effect from August 2018 until January 2021, and directed that televisions be removed from SHU inmates in areas 17 and 18. Plaintiff further alleges that Defendant went over the head of then-JTVCC Warden Dana Metzger to convince Delaware Department of Correction ("DDOC") Commissioner Perry

---

[1] When bringing a §1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988).

[2] Also before the Court are Plaintiff's motion to strike discovery (D.I. 33), which will be denied, and Plaintiff's motion to appoint expert (D.I. 38), which will be dismissed as moot.

Phelps to implement the policy, which was in place until Robert May replaced Metzger as warden and ordered the televisions returned.  (*Id*. at 3-5).

On July 25, 2018, Plaintiff submitted a grievance describing an incident that had occurred on July 22, 2018.  (D.I. 32-1 at 10).  According to his grievance, Plaintiff had moved to a different cell due to renovations.  (*Id.*).  While unpacking, the toilet flooded the cell, and his television, among other items, was damaged.  (*Id.*).  He requested that his television be repaired.  (*Id.*).   Plaintiff does not now complain about the water damage.

Plaintiff states that on August 12, 2018, Corporal Figueroa seized a television from his cell.  (D.I. 22 at 3).  It appears to be the same water-damaged television.  In an August 12, 2018 incident report, Corporal Figueroa stated that during a morning shakedown of Plaintiff's cell he and another officer discovered a television and confiscated it, advising Plaintiff that the television would be sent to property because Plaintiff was not allowed to have a television due to his classification level.  (D.I. 32-2 at 4).  Corporal Figueroa discovered that the name of another inmate currently incarcerated at JTVCC was on the television.  (D.I. 32-2 at 2).  Investigator Orlando Dejesus approved Corporal Figueroa's incident report the same day.  (*Id*. at 6).   In connection with the pending grievance, Investigator Dejesus stated:

> Offender is not in possession of his TV because of his QOL and housing status (17). . . . [P]ersonnel in this unit discovered that due to his quality of life, this offender should not have had the television to begin with.  I inspected the television and it was severely old (older tube style tv) and personnel further identified that there were numerous other names on the tv other than his, even offenders that are currently housed on the compound.  This offender became highly offensive towards personnel in regards to doing [their] jobs, as he quoted.  Unable to identify if there was any water damage to the TV or not.

(D.I. 32-1 at 2). A hearing was held on September 26, 2018, after which the grievance committee recommended denying the grievance because there was no proof of purchase for the television. (D.I. 32-1 at 5). On October 1, 2018, the grievance was denied on the basis that staff had determined that the television should not have been in Plaintiff's possession. (*Id.* at 6).

The due date for an appeal was October 17, 2018. (*Id.* at 7). By October 26, 2018, Plaintiff had not filed an appeal; "Per policy, grievance marked as 'RESOLVED' and as an acceptance of the decision." (*Id.*).

Defendant has filed a motion for summary judgment, arguing among other things that the case must be dismissed based on Plaintiff's failure to exhaust his administrative remedies. (D.I. 31). Plaintiff has filed a response in opposition. (D.I. 37).

II.     **LEGAL STANDARDS.**

Rule 56(c) requires the court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be

3

believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Industrial Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

As a general rule, the court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

> Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations, quotations, and alterations omitted).

### III.   DISCUSSION

Defendant argues that the Complaint must be dismissed for failure to exhaust administrative remedies based on Plaintiff's failure to appeal the denial of his grievance. (D.I. 32 at 11-13). Plaintiff counters that an appeal would have been directed to DDOC Commissioner Phelps, who approved the television confiscation policy, and Commissioner Phelps "cannot logically hear an appeal about himself!" (D.I. 37 at 2).

The Prison Litigation Reform Act of 1995 (PLRA) prevents prisoners from filing suit with respect to prison conditions under Section 1983 "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under the PLRA,

prisoners must exhaust all available administrative remedies at the prison level before bringing suit.  See *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007).  To properly exhaust his administrative remedies, an inmate must "complete the administrative review process" in compliance with all applicable procedural rules prior to filing suit in federal court.  *Woodford*, 548 U.S. at 88.  In other words, inmates must avail themselves of "all steps the agency holds out." *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).  The exhaustion requirement applies to all inmates seeking "redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002).

Whether a prisoner has properly exhausted a claim requires an evaluation of the "prisoner's compliance with the prison's administrative regulations governing inmate grievances, and the waiver, if any, of such regulations by prison officials." *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004).  The "prison grievance procedures supply the yardstick for measuring procedural default." *Id.* at 231.  Therefore, the inmate grievance procedures created by the DDOC, and in use at the JTVCC, measure whether Plaintiff's claims are procedurally defaulted.  *See id.*

On this record, Plaintiff's failure to appeal the denial of the grievance does not provide grounds for dismissal based on failure to exhaust administrative remedies.  In *Hardy v. Shaikh*, a case where "the defendants produced no evidence that [the plaintiff] was aware of the appeal requirement," the Third Circuit concluded that "[a]ll 'available' remedies were exhausted."  959 F.3d 578, 589, 590 (3d Cir. 2020).  The Court in *Hardy* noted, "The grievance rejections provided an array of explanations, none of which was the failure to appeal, and they included no information or instruction about the next step

an inmate should take[,] [and] did not even mention the word 'appeal.'" *Id.* at 590.  Here too, the exhibits submitted by Defendant in relation to Plaintiff's grievance appear to give no explanation of the appellate process.  In *Hardy*, the Court noted, "The defendants conceded at oral argument that they have no basis to dispute [the plaintiff's] representation that [the prison] does not permit inmates to have personal belongings in the infirmary and that [the plaintiff] did not receive the handbook when admitted," and therefore the defendants were "unable to impute knowledge based on [the plaintiff's] access to the handbook or the grievance manual." *Id*. at 589.  Here, although Defendant provided as an exhibit the DDOC grievance policy, which includes the appeal requirement (D.I. 32-3 at 8), there was no evidence that Plaintiff, as an inmate confined to the SHU, had access to this policy.[3]  For these reasons, I cannot conclude on this record that an appeal of the denial of the grievance was a remedy "available" to Plaintiff.

Nonetheless, the record before me establishes that Plaintiff failed to exhaust his administrative remedies.  "A primary purpose of exhaustion is to alert prison officials to a problem." *Drumgo v. Radcliff*, 661 F. App'x 758, 761 (3d Cir. 2016) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)).  As noted, the claim brought in this Court by Plaintiff is one based on alleged violation of his First Amendment right to practice religion.  By contrast, his grievance merely sought the repair of his television based on water damage from his toilet overflowing.  His grievance was denied in part because it was determined that he was unable to have a television, per the policy he now challenges on

---

[3] Notably, in his reply brief, Defendant pointed out that Plaintiff incorrectly asserted in his response that an appeal of the grievance denial would be heard by the DDOC Commissioner, when in fact, per DDOC policy, an appeal would be heard by the Bureau Chief.  (D.I. 40 at 6 n.1) (citing D.I. 32-3 at 8).

First Amendment grounds. Missing from the administrative record is the slightest hint of a constitutional challenge to the policy.[4] *Cf. Drumgo,* 661 F. App'x at 761 ("Here, in a grievance filed on the same day as the incident, [the plaintiff] claimed only that the corrections officer damaged his sneakers. He did not mention that a physical assault had occurred. Therefore, because [the plaintiff's] grievance included no facts relevant to his claim of a physical assault, we conclude that he failed to exhaust his administrative remedies."); *Brownell v. Krom*, 446 F.3d 305, 311 (2d Cir. 2006) (holding that a grievance for recovery of lost property was insufficient to exhaust a claim for intentional mishandling of property in retaliation for protected conduct).

Accordingly, Plaintiff failed to exhaust his administrative remedies and the case must be dismissed.

## IV.  CONCLUSION

For the above reasons, the Court will grant Defendant's motion and will dismiss the case, without prejudice, for failure to exhaust administrative remedies.

An appropriate Order will be entered.

---

[4] In an unrebutted sworn affidavit submitted with Defendant's motion for summary judgment, JTVCC's "Inmate Grievance Chairperson," stated that JTVCC keeps a record of all grievances filed by inmates, he has access to the records of inmate grievances, he conducted a thorough search of Plaintiff's grievances, and he "found no record of [Plaintiff] filing any grievance that he was denied access to religious services or unable to attend or view religious services." (D.I. 32-4 at 2-3).